UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DANNY CHAN and KATIE LEAL,
and on behalf of all others similarly situated,

Plaintiffs,

v.

NUNA BABY ESSENTIALS, INC.

Defendant.

**MEMORANDUM AND ORDER**

25-cv-03985 (LDH) (PK)

LASHANN DEARCY HALL, United States District Judge:

Danny Chan and Katie Leal ("Plaintiffs") bring the instant action, on behalf of themselves and all other persons similarly situated, against Nuna Baby Essentials, Inc. ("Defendant") alleging (1) breach of the express and implied warranties, (2) violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, (3) fraud, (4) negligent misrepresentation, (5) violations of Sections 349 and 350 of the New York General Business Law, N.Y. GBL §§ 349, 350, and (6) unjust enrichment. Defendant moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint in its entirety.

## BACKGROUND[1]

Defendant is the manufacturer, designer, and seller of the Rava convertible car seats ("Rava"). (Complaint ("Compl.") ¶ 1, ECF No. 1.) The Rava is advertised as a "fan-favorite for security, ease of-use, longevity and sleek design" featuring a "no-rethread harness" that makes it "easy to adjust for comfort and growth." (*Id.* ¶¶ 3, 40.) The harness on the Rava is controlled by a "front harness adjuster button" which ensures that the harness system remains securely in place

[1] The following facts are taken from the Complaint and accepted as true for the purposes of addressing Defendants' instant motion.

until the button is pressed and the harness is loosened. (*Id.* ¶¶ 4.) The release button is uncovered by design and prone to collecting debris, which can inhibit the proper function of the harness system. (*Id.* ¶¶ 4-5.) Due to this defect, on December 20, 2024, Nuna announced a voluntary recall of Ravas manufactured between July 16, 2016, and October 25, 2023. (*Id.* ¶¶ 45-47.) The recall letter sent by Defendant notifies Rava owners of the harness defect and the impact the defect can have on the function of the product. (Compl. Ex. A, ECF No. 1-1.) The letter states that Defendant is "developing a remedy kit" and "will send another notification" when the remedy kit is available. (*Id.*) The notice instructs Rava owners that they may "continue using [the] existing car seat as long as the harness is properly securing the occupant" and asks owners to "[c]heck the performance of [the] harness by pushing on the seat back with one hand and pulling the harness straps firmly with the other." (*Id.*)

Plaintiffs Chan and Leal purchased their Ravas in July 2022 and February 2024, respectively. (Compl. ¶¶ 68, 79.) Plaintiff Chan received formal notice of the recall in February 2025. (*Id.* ¶ 73.) While Plaintiff Leal never received formal notice, she learned about the recall when Defendant published formal notice in January 2025. (*Id.* ¶¶ 83-84.) Plaintiffs allege that, had they "understood the true nature of the Product at the time of purchase," they would not have "purchased the [p]roduct, or else would have paid substantially less for it." (*Id.* ¶¶ 76, 87.) Plaintiffs, fearing for the safety of their children, discontinued their use of the Rava after they learned of the defect and contacted Defendant for a remedy. (*Id.* ¶¶ 74-75, 85-86.) The remedy offered by Defendant included a seat pad, matching headrest cover, cleaning kit, and care instructions (the "Remedy Kit"). (*Id.* ¶¶ 9 n.10, 56, 77, 88.) Affected customers were directed by Defendant to fill out a form to request the Remedy Kit in-order to receive one and "ensure [the] car seat's harness adjuster is kept clean and working correctly.". (*Id.* ¶ 9 n.10 ("Rava

Voluntary Recall, nunababy.com, https://nunababy.com/usa/recalls-rava1.")) Plaintiffs allege that Defendant's remedy did not actually address the defect or make the product safe nor did it remedy the false representations and omissions Defendant made regarding the product. (*Id.* ¶¶ 77, 88.) Specifically, Plaintiffs allege the proposed remedy is inadequate because: (1) it cannot remediate the underlying dangerous defect; (2) fails to recall the entire product, allowing and encouraging continued use while the risk of injury remains; and (3) does not provide a monetary remedy to consumers. (*Id.* ¶¶ 58-61.)

**STANDARD OR REVIEW**

Generally, to withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id.* With respect to claims alleging fraud, however, Rule 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this standard, a plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Any allegations that are "conclusory or unsupported by factual assertions" will be deemed insufficient. *Id.*

**DISCUSSION**

Defendant seeks dismissal of the Complaint in its entirety for lack of standing. (Def.'s Mem. of Law in Supp. Mot. Dismiss Pls.' Class Action Compl., ("Def.'s Mem.") at 6-9, ECF

No. 30-1.) Specifically, Defendant argues that Plaintiffs lack standing due to the National Highway Traffic Safety Administration ("NHTSA") approved recall which offered affected consumers with a Remedy Kit, the option to send the Rava for additional cleaning, and reimbursement for out-of-pocket expenses related to replacing the car seat. (*Id.*; *see also Id.* at 3-4 (explaining full scope of remedies offered.) As such, according to Defendant, the recall process and remedy options addressed the alleged injuries Plaintiffs incurred so that Plaintiffs are unable to state an injury-in-fact. (*Id.* at 6-9.) In opposition, Plaintiffs argue that they seek redress for the injury they suffered at "point of purchase when they paid a price premium for a product . . . contain[ing] a dangerous defect that rendered it worth less than represented[.]" (Pls.' Resp. in Opp'n to Def.'s Mot. to Dismiss ("Opp'n") at 4, ECF No. 31.) In addition, Plaintiffs seek injunctive relief against "an ongoing risk of future deception" based on Defendant's allegedly misleading "safety/testing representations." (*Id.* at 4-5.)

Article III of the United States Constitution limits the jurisdiction of federal courts to "actual cases or controversies." *Raines v. Byrd,* 521 U.S. 811, 818 (1997) (citations omitted). "To ensure that this bedrock case-or-controversy requirement is met, courts require that plaintiffs establish their standing as the proper parties to bring suit." *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 92 (2d Cir. 2018) (quoting *Mahon v. Ticor Title Ins.* Co., 683 F.3d 59, 62 (2d Cir. 2012)). To this end, a plaintiff may satisfy the standing requirement by establishing that he has "(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). An injury-in-fact is "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (internal quotations omitted).

"Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) (quoting *Spokeo*, 578 U.S. at 340–341).

As a general matter, a plaintiff alleging that a deceptive practice caused him or her to overpay for a product may be able to state an injury-in-fact. *See John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) ("overpaying for a product results in a financial loss constituting a particularized and concrete injury in fact."); *see also Servedio v. State Farm Ins. Co.*, 889 F. Supp. 2d 450, 453 (E.D.N.Y. 2012) ("[A] plaintiff who alleges that a deceptive practice caused him to pay more than the good or service he actually received was worth may be able to satisfy the injury requirement."). However, in the recall context, a plaintiff cannot make out such an injury if the defendant has sufficiently remediated the injury alleged, as Defendant has done so here. *See Kommer v. Ford Motor Co.*, No. 17-CV-296, 2017 WL 3251598, at *5 (N.D.N.Y. July 28, 2017) (citing *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 678 (S.D.N.Y. 2012).

Here, Plaintiffs' price premium theory of injury is undermined by the fact that the NHTSA recall and repair implemented by Defendant addressed the defects complained off. *See Tarsio v. FCA US LLC*, No. 22-CV-9993, 2024 WL 1514211, at *4 (S.D.N.Y. Apr. 8, 2024) ("issuance of a recall and repair deprives a party of an injury in fact based on any defect(s) remedied by the recall and repair."). The Ravas subject to the NHTSA recall had an exposed harness adjuster button that was prone to collecting debris, which affected the functionality of the harness. (Compl. ¶ 47.) Defendants offered the Remedy Kit to address this exact issue by

adding a cover over the front harness adjuster button; a redesign that appears for later Rava models as well. (Compl. ¶¶ 48, 96.)

Plaintiffs, at various points in the Complaint, allege the inadequacy of the recall remedy and claim that the value of the product is significantly impaired by the modifications imposed by the Remedy Kit. (Compl. ¶¶ 55-67, 77-78, 88-90.) These allegations are conclusory at best. As Defendant aptly argues, Plaintiffs' claims here are like those that were dismissed in *Tarsio v. FCA US LLC*, No. 22-CV-9993, 2024 WL 1514211 (S.D.N.Y. Apr. 8, 2024). The court in *Tarsio* found that plaintiff there did not adequately allege an injury-in-fact based on a price premium theory because plaintiff failed to "adequately allege that the purported [d]efect remains after the recall remedy has been completed." *Tarsio*, 2024 WL 1514211, at *4. The court reached this conclusion because the plaintiff did not allege sufficient facts demonstrating the ineffectiveness of the NHTSA-backed repair and did not allege that he "availed himself of the recall remedy at all." *Id.* at *5. The same is true here. Plaintiffs primarily take issue with the form of the recall remedy, instead of its failure to remediate the defect at issue. (*See* Compl. ¶¶ 77, 88 ("The only remedy appropriate for Plaintiff [] and for Class Members is a refund of the Product.")) Notably, like the plaintiff in *Tarsio*, Plaintiffs here do not allege availing themselves to any of the remedies Defendant provides and those remedies failing to repair the defect in question.[2] Plaintiffs' claims here are also distinguishable from those brought in *Ricardo Moncada v. Nuna Baby Essentials* where the court found that plaintiff there had adequately

---

[2] Defendants allege that they "contacted Nuna via email" following their "[d]iscovery of the recall" and were "directed to the online form for the Recall." (Compl. ¶¶ 75, 86.) The "online form for the Recall" asks affected customers to "[f]ill out the form below to request [a] Remedy Kit." (*Id.* ¶ 9, n. 10 ("Rava Voluntary Recall, nunababy.com, https://nunababy.com/usa/recalls-rava1.")) Plaintiff Leal alleges that she "has not received the new seat pad, cleaning kit, or care instructions," (*Id.* ¶ 89.) However, conspicuously absent are facts that show Plaintiffs requested a Remedy Kit, per the process outlined in Defendant's recall notice, and failed to receive one. The Complaint is also silent as to the failure of the Remedy Kit, once requested and implemented, to address the defect at issue.

alleged specific failures of the NHTSA-backed recall and repair to remediate the product defect. *Ricardo Moncada v. Nuna Baby Essentials, Inc.*, 831 F. Supp. 3d 268, 277 (S.D.N.Y. 2026).

Furthermore, the injunction Plaintiffs seek that would prevent Defendant from "selling and marketing the Products containing the Defect" and would require Nuna to "issu[e] a state-of-the-art notice program for the wide dissemination of a factually accurate recall notice" ignores the fact that a NHTSA approved recall has already been issued for the defective product, and the Defendant no longer is marketing or selling the product. (*See* Compl. ¶ 48 (showing the new Rava design that is currently on the market that does not manifest the defects described in the Complaint.)) Thus, Plaintiff's conclusory allegations regarding the failures of the recall and remedy process, their failure to allege the presence of a concrete and redressable injury, and their failure to specify what lingering conduct injunctive relief would remedy deprive them of Article III standing.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss the Complaint is GRANTED with leave to amend.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2026

/s/ LDH
LASHANN DEARCY HALL
United States District Judge